## Potter v. Potter.
(Decided May 30, 1933.)

JESSE MORGAN and D. I. DAY for appellant.

HAWK & LEWIS, O. A. STUMP and H. C. FAULKNER for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

Didema Potter and W. H. Potter were married when she was 16 years of age. She was 63 years of age at the time this action was instituted; W. H. Potter was older by a few years. There have been born eleven children as the fruit of their marriage; ten of whom lived until they reached manhood and womanhood, one dying during infancy; eight of them are now living, all are married. One daughter and her husband have separated; the husband of another daughter is dead, and one son died leaving three infant children.

This action was instituted by the wife, charging that W. H. Potter in 1927 had abandoned her without like fault on her part, and without making provision for her support and maintenance. He denies the charges and alleges that she habitually mistreated him, and refused him the privileges of a husband. At the time of their marriage they were poor people. His father placed him in possession of a tract of land and permitted him to exercise ownership over it. Her father gave to her a small tract of land and permitted her to enjoy it as her own. By industry, energy, frugality, and much toil they have accumulated considerable real estate, and a large personal estate, all in the name and actual possession of W. H. Potter, except the home. During her married life, she worked in field and forest as a common laborer, with her husband, and also did the house-

work. As their children reached school age, they were sent to the common schools conducted in the vicinity of their home. After attending such schools and showing the capacity and a willingness to acquire an education, they were sent away from home and attended advanced schools. The mother cannot read nor write. The father after his marriage attended school, and did so even after his children were eligible to enter, he and they attending school together, their mother remaining at home looking after the farm and caring for and doing the housework. As time passed they acquired by their joint labor and efforts a home, located on a tract of land of about six hundred acres, consisting of a dwelling of nine or more rooms, where they resided at the time of their final separation, and where Didema Potter and her two daughters now reside. Many years ago, a store building was erected near their home, in which W. H. Potter conducted a store. About 20 years before the filing of this action, their youngest child was born, and W. H. Potter began to engage in the business of a salesman for the Consolidation Coal Company. His duties carried him away from his home. He also engaged in trading. His land contained valuable deposits of coal which he leased for mining purposes. He acquired title to other land and leased it. He acquired a large amount of stock in the Elkhorn Coal Company. While he was away from home engaged in the business of a salesman, and also looking after his mining interests, his wife remained at home superintending the business of the store, the home, and discharging her household duties. The basis of this litigation originated after the birth of their youngest child, and after he began the business of a salesman. There is a direct, positive conflict in the evidence as to their relationship with, and treatment of, each other, continuously since the birth of their youngest child, and as is usual in such regrettable litigation between the parents, the sons and daughters are divided. A number of them testifying that the father is at fault, and that his fault exceeds that of the mother. A number of them testify the contrary. The evidence comprises 467 pages. The parties themselves have testified elaborately, detailing their differences and the reasons therefor. They are corroborated and contradicted by their sons and daughters, all of whom are mature men and women. The children who have testified in behalf of the father declare they never

heard their mother speak a kind word to him. Two or more of them claim that they heard their mother in the presence of others speak unkindly to, and use abusive language toward the father. The fact that the persons in whose presence these witnesses claim the statements of their mother were made were not introduced as witnesses to corroborate them tends to affect their credibility. The building occupied by the mother is a frame, painted on the outside, unfinished inside, without conveniences, except electric lights. The store has not been in use for years and on account of its condition is not suitable for occupancy. Around the dwelling there are two and one-half or three acres called the meadow; another acre and half have been used for years for the growing of corn. A small garden is used in connection with the dwelling. The water furnished to the dwelling is obtained from a well in the yard. Several of the children and others who testified for the father, estimated the rent of the home, including the use of the above land, at from $100, $200 to $400 per month. The home is surrounded by a miners' camp and is located in the country. The rental fixed by these witnesses is so unreasonable, it affects not only their credibility as to the rental value of the home, but the weight of their testimony narrating and detailing the conduct of the mother toward, and the treatment of, the father. Those of the children who testify in behalf of the mother are fairer, more reasonable and modest, show greater consideration of their parents than those testifying for the father. Their statements of what they knew of the treatment of the one by the other and their conduct and relations with each other are more impressive than those of the children who testify in behalf of the father. The testimony of the witnesses who were not akin to the parties strongly corroborate that of the sons and daughters who testified in behalf of their mother. The corroborative testimony likewise contradicts that of the sons and daughters who testified in behalf of the father. W. H. Potter has been kind with, and considerate of, his children; providing them with money and conveniences, both before and since their marriage, including homes. He strenuously insists that he surrendered the possession of the store to his wife because of her taking therefrom without his consent money belonging to the store. The store was conducted by Mrs. Potter

with the help of the sons and daughters who kept the books and bank accounts, purchased and paid for the merchandise, their mother at the time being unable to read or write. At the time he claims he surrendered the store to his wife, the merchandise on hand was of the estimated value of $7,000 or $8,000. She claims that his continuous absence from home forced her to assume the control of the store with the assistance of her sons and daughters. Her explanation is more plausible and consistent with common experience. After obtaining possession of the store, a daughter and son-in-law acquired by purchase from her a two-thirds interest in it when they and she conducted the business for several years. Later the youngest son bought the sister's and brother-in-law's interest in the store, then he and the mother engaged in the business, he assuming the duties of general manager. After it was conducted under his supervision a few years, it was closed by its debts. He is one of the witnesses in behalf of the father and is most severe on his mother. He claims that while he and his mother were engaged in running the store that he obtained from his father money with which to pay some of the accounts of the store. In the production of the evidence in behalf of W. H. Potter, it was attempted to be shown by testimony of W. H. Potter and others, the amounts he expended and paid by checks for the use of his children at home, and for the benefit of his son while in the store, should be charged against his wife, and in this way justify him in avoiding his liability for her support and maintenance. His generosity manifested toward his children is commendable, but it may not be relied upon in avoidance of his duty to maintain and support his wife. The checks produced as evidence of the amounts so expended by him, together with the unreasonable, exorbitant rent, stated by his witnesses, of the residence, the two or three acres of meadow land, and the acre and half or two acres used for growing corn, including the garden, were urged in the court below, and here, as an exoneration of the husband of his liability for the maintenance and support of his wife. Without an elaborate detail of the evidence, bearing on the question as to whether the wife or husband is in fault or that the fault of the one exceeds in a degree greater than that of the other, it is plain the evidence fails to show any reason justifying his nonsupport of his wife. Accepting the testimony of the parties, neither

454

is entirely without fault. The property owned by them is the product of the joint efforts and energies of their lives, accompanied by much frugality. The fact that the wife is without means of support and maintenance is not disputed. It is true that she occupies the residence and is in charge of it and the premises used in connection therewith. It furnishes to her no means of maintenance and support. The record fails to disclose sufficient reasons exonerating the husband of his marital obligation and liability to his wife for maintenance and support. The general rule is that great weight will be given to the findings of fact by the chancellor. But we have examined the record for ourselves, and we are convinced that the decree of the chancellor is against the weight of the evidence. It is our judgment that W. H. Potter should pay to his wife $100 per month from the institution of this action until further orders of the court and the costs, including a reasonable attorneys' fee in the circuit court and this court, and she should also retain the dwelling and furnishings, and all land and appurtenances belonging thereto.

The judgment is reversed with directions to enter a judgment accordingly, and for proceedings consistent with this opinion.